**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **WASHINGTON MURILLO-CASTILLO,**<br><br>    **Petitioner,**<br><br>**v.**<br><br>**JONATHAN FLORENTINO, et al.,**<br><br>    **Respondents.** | **Civil Action No.  25-16728 (MCA)**<br><br><br>**MEMORANDUM OPINION** |

This matter comes before the Court on a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, in which Petitioner Washington Murillo-Castillo challenges his mandatory detention without bond by immigration authorities.  At issue in this habeas proceeding is whether Petitioner may be lawfully detained under 8 U.S.C. § 1225(b)(1) after he was arrested in the interior of the United States following a period of parole under 8 U.S.C. § 1182(d)(5)(A).  For the reasons explained below, the Court finds that Petitioner is unlawfully detained under § 1225(b)(1), GRANTS the Petition on that basis, and orders Respondents to release Petitioner from detention within 24 hours.  The Court dismisses the Amended Petition and motions for temporary injunctive relief as moot in light of the relief provided.

I.      **RELEVANT BACKGROUND & PROCEDURAL HISTORY**

Petitioner is a 38-year-old citizen and national of Ecuador.  (ECF No. 1, Petition at ¶ 1.) "On or about October 13, 2022, [Petitioner] was encountered by Customs and Border Protection ("CBP") in Laredo, Texas. After stating that he would be harmed if returned to Ecuador, he was processed and traveled to New Jersey."  (Petition at ¶ 4.)  Department of Homeland Security records submitted by Respondent indicate that Petitioner

> entered the United States on or about October 13, 2022, at or near, the Rio Grande City, Texas border without inspection. On this same date, the U.S. Border Patrol at The Eagle Pass, Texas Sector, encountered MURILLO-CASTILLO and served an I-860 and issued him an Expedited Removal with a Credible Fear Claim. On October 27, 2022, MURILLO-CASTILLO had a Credible Fear package submitted to USCIS. The Credible Fear Package was pending with USCIS.

(ECF No. 1-8, Form I-213 at 2.)  DHS records also indicate that Petitioner has no known criminal history, gang affiliation, or links to terrorist organizations.  (*Id.*)

DHS records show that Petitioner was released on parole pursuant to 8 U.S.C. § 1182(d)(5)(A) and that parole was authorized for a year, beginning on December 14, 2022. (ECF No. 6-7, Form 1-286 at 1.)  It appears undisputed that Petitioner was not provided with a credible fear interview prior to being paroled.

In 2023, Petitioner applied for asylum with USCIS.  (ECF No. 1, Petition at ¶ 9).  On June 12, 2025, USCIS dismissed Petitioner's application pursuant to 8 C.F.R. § 208.30 because Petitioner remained subject to the credible fear screening process. (ECF No. 6-8, Form I-589 Dismissal Notice).  On August 1, 2025, USCIS determined that Petitioner has a credible fear of persecution or torture if returned to Ecuador, and ICE issued a warrant for his arrest on that same date.  (ECF No. 6-1, Form I-213 at 2); ECF No. 6-3, Form I-200); ECF No. 1, Petition at ¶¶ 2, 8, 9.)

On that same day, USCIS filed a Notice to Appear with the immigration court, thereby commencing "removal proceedings under section 240 of the [INA]."  (ECF No. 6-4, Notice to Appear; *see also* ECF No. 1, Petition at ¶ 2.)  The Notice to Appear charged Petitioner with removability under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without admission or parole, and INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), for being an immigrant without valid documents.  (ECF No. 6-4, NTA at 1

("You are an alien present in the United States who has not been admitted or paroled.").)  The records contain no documents revoking Petitioner's parole, which appears to have expired by the time he was taken into custody on or about August 1, 2025.

Petitioner is currently detained at the Delaney Hall Detention Facility in Newark, New Jersey.  (ECF No. 1, Petition at ¶¶ 2, 4.  On October 7, 2025, an immigration judge denied Petitioner requested custody redetermination (i.e., bond hearing) pursuant to *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).  (ECF No. 6-5, IJ Order; ECF No. 1, Petition at ¶¶ 3, 9.)  On December 3, 2025, an immigration judge pretermitted Petitioner's asylum application and ordered Petitioner removed from the United States.  (ECF No. 14, Dec. 3, 2025 Orders of the IJ; *see also* ECF No. 12, Amended Petition at ¶ 14, ECF No. 13-1, TRO Motion at at 4.)  Petitioner appealed the immigration judge's orders to the Board of Immigration Appeals ("BIA") on December 27, 2025, and that appeal remains pending   (ECF No. 14, Jan. 8, 2026 BIA Filing Receipt; *see also* ECF No. 12, Amended Petition at ¶ 15.)

After the initial Petition was briefed, Petitioner filed a motion for a temporary restraining order ("TRO") (ECF No. 8), an amended petition (ECF No. 12), and a second TRO Motion (ECF No. 13).  The Government provided a letter with updated authority (ECF No. 10) and a status update.  (ECF No. 14.)  The Court will decide the matter based on the parties' current submissions and without additional briefing or argument.

## II.   STANDARD OF REVIEW

The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States.  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2).  District courts have the power to grant writs of habeas corpus.  28 U.S.C. § 2241(a).  A district court's authority includes jurisdiction to hear habeas challenges to

immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The burden is on petitioner to show that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

### III.    **DISCUSSION**

The Court first addresses the threshold issue of whether immigration authorities paroled Petitioner under 8 U.S.C. § 1182(d)(5)(A).[1]  The Petition contends that he was released on recognizance and that his detention is governed by 8 U.S.C. § 1226(a) not 8 U.S.C. § 1225(b)(2), a provision of the INA that has been the subject of much litigation in this District.[2]

In their Answer, Respondents contend that Petitioner's allegations are premised incorrectly on the view that ICE is detaining him under § 1225(b)(2) rather than under § 1225(b)(1). Respondents argue that Petitioner is properly detained under 8 U.S.C. § 1225(b)(1)(A)(iii) and is subject to mandatory detention until his removal proceedings conclude.  According to Respondents, that section applies to aliens such as Petitioner that are "encountered within 14 days

---

[1] Courts in this District have generally agreed that where a petitioner was inspected at or near the border and "outright released from detention by the Government pursuant to its authority under 8 U.S.C. § 1226(a)," he is not subject to mandatory detention under § 1225(b) if later arrested in the interior of the United States. *See Salas v. Soto*, No. 25-17339 (MAS), 2026 WL 485712, at *3 (D.N.J. Feb. 21, 2026); *Flores v. Rokosky*, No. 25-18998, 2026 WL 84434, at *2–3 (D.N.J. Jan. 12, 2026) (rejecting Government's argument that petitioner was mandatorily detained under § 1225b(b)(1), when Government did not show petitioner was paroled); *Salvatierra v. Bondi*, No. 25-18608, 2026 WL 45171, at *1 (D.N.J. Jan. 7, 2026) (same); *see also Matter of Olty Cabrera-Fernandez*, 28 I. & N. Dec. 747, 749 (Sept. 11, 2023) ("Release on such conditional parole under section 236(a)(2)(B) of the INA, 8 U.S.C. § 1226(a)(2)(B), is legally distinct from release on humanitarian parole under section 212(d)(5)(A) of the INA, 8 U.S.C. § 1182(d)(5)(A).").

[2] *See, e.g., Zumba v. Bondi*, 25-cv-14626 (KSH), 2025 WL 2753496, at *8 (D.N.J. Sept. 26, 2025) (analyzing 8 U.S.C. § 1225(b)(2)).  To fall within the mandatory detention section of § 1225(b)(2)(A), a noncitizen must be "seeking admission" at or near the border or port of entry, and an "examining immigration officer" must determine that the noncitizen is "not clearly and beyond a doubt entitled to be admitted[.]" *Id.* at *7.

of entry without inspection and within 100 air miles of any U.S. international land border."[3] (ECF No. 6, Answer at 6 (citing *Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422, 425 (3d Cir. 2016) (citations omitted); *Matter of M-S-*, 27 I. & N. Dec. 509, 511 (A.G. 2019).) In his reply brief, Petitioner appears to concede that he was paroled under § 1182(d)(5)(A). He argues at length, however, that § 1225(b)(1) does not apply to him because he was paroled.[4] (ECF No. 7 at 20 ("Respondents would have this Court treat Petitioner, who was paroled and has been living in the country for over 3 years, as a noncitizen who is actually physically present at the border and . . . was not paroled into the United States.")

The Court finds that Petitioner was paroled under § 1182(d)(5)(A) and next addresses which detention statute applies to him. As summarized in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* at 289 (emphasis added). Sections 1225 and 1226 govern the detention of noncitizens prior to a final order of removal. *See id.* at 287-89. Specifically,

> § 1225(b) applies primarily to aliens seeking entry into the United
> States ("applicants for admission" in the language of the statute).
> Section 1225(b) divides these applicants into two categories. First,
> certain aliens claiming a credible fear of persecution under §

---

[3] Although both the *Castro* petitioners and Petitioner were apprehended by CBP near the border, in *Castro* the "[p]etitioners' fear of persecution was found to be not credible, such that their expedited removal orders became administratively final. Each family then filed a habeas petition challenging various issues relating to their removal orders." 835 F.3d at 425. Petitioner in contrast, was paroled into the United States, found to have a credible fear of persecution if returned to Ecuador after his parole expired, and placed in full removal proceedings. And although he was ordered removed, his removal order is not final because his appeal to the BIA is still pending.

[4] Petitioner also argues that his expedited removal order is legally deficient and that the Immigration Court unlawfully dismissed his asylum proceedings, but these arguments relate to his underlying removal proceedings and must be made to the BIA and, if necessary, to the Court of Appeals in a Petition for Review.

> 1225(b)(1) "shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Second, aliens falling within the scope of § 1225(b)(2) "shall be detained for a [removal] proceeding." § 1225(b)(2)(A).

*Id.* at 287.  The *Jennings* Court held that "§§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the completion of applicable proceedings[.]"[5]  *Id.* at 302.  In contrast, 8 U.S.C. § 1226(a) governs the detention of noncitizens (without qualifying criminal convictions or charges) already present within the United States who may be detained pursuant to a warrant based on flight risk or dangerousness and are entitled to receive a bond hearing before an immigration judge.  *See id.* at 288.

Although the parties dispute whether Petitioner can be detained under § 1225(b)(1) following the decision to parole him, it appears that Petitioner was initially subject to § 1225(b)(1) when he was apprehended in 2022.  A noncitizen who enters the United States and is detained shortly after making an unlawful crossing of the border may be subject to expedited removal under § 1225(b)(1).  *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020).  Section 1225(b)(1) is "a separate track for expedited removal proceedings," which "'substantially shorten and speed up the removal process.'"  *Rodriguez-Acurio v. Almodovar*, 811 F.Supp.3d 274, 291 (E.D.N.Y. 2025) (citing *Make the Rd. New York v. Wolf*, 962 F.3d 612, 618–19 (D.C. Cir. 2020)).  Applicants covered by § 1225(b)(1) may be removed "without further hearing or review" pursuant to an expedited removal process unless he "indicates either an intention to apply for asylum . . . or a fear of persecution[,]" in which case he is referred for an asylum interview.  8 U.S.C. § 1225(b)(1)(A)(i)-(ii).

---

[5] In 2019, following *Jennings*, the BIA overruled *In Re X-k-*, 23 I. & N. Dec. 731, 731 (2005), and held that noncitizens who are "transferred from expedited removal proceedings to full removal proceedings after establishing a credible fear of persecution or torture" are "ineligible for release on bond" and must "be detained until his removal proceedings conclude, unless he is granted parole." *Matter of M-S-*, 27 I. & N. Dec. 509, 509 (2019).

To fall within § 1225(b)(1), a noncitizen must be "inadmissible" to the United States either because he lacks proper entry documents or because he engaged in fraud or willfully misrepresented a material fact on his application for admission. 8 U.S.C. § 1225(b)(1)(A)(i). Under the current version of that provision, he must also either be "arriving in the United States," under 8 U.S.C. § 1225(b)(1)(A)(i), or be a noncitizen "who has not been admitted or paroled into the United States, and has not affirmatively shown, to the satisfaction of an immigration officer, that [he] has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility[.]" *Id.,* § 1225(b)(1)(A)(iii)(II). The latter provision is known as the "Designation Provision," and when Petitioner was apprehended in 2022, it applied to a noncitizen who has not been admitted or paroled and was encountered within 14 days of entry and 100 miles of the border. *See Castro*, 835 F.3d at 425 (explaining that Section 1225(b)(1) applies to "arriving aliens" and those aliens "encountered within 14 days of entry without inspection and within 100 air miles of any U.S. international land border").

Noncitizens subject to § 1225(b)(1) will generally be subject to expedited removal procedures unless they indicate to immigration officers that they have a credible fear of persecution, in which case they may be referred for further proceedings regarding that fear. *Castro*, 835 F.3d at 425. As noted above, such noncitizens are subject to mandatory detention throughout removal or credible fear proceedings. *See* 8 U.S.C. §§ 1225(b)(1)(B)(ii), (b)(1)(B)(iii)(IV). But the government may, in its discretion, temporarily parole such aliens "for urgent humanitarian reasons or significant public benefit." *See Jennings*, 583 U.S. at 287-88. The parole statute states in relevant part that

> such parole of an alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of

> the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission.

8 U.S.C. § 1182(d)(5)(A).

It is axiomatic that statutory construction begins with the text of the statute. *See Sebelius v. Cloer*, 569 U.S. 369, 376, (2013). Respondents argue that once parole ends, Petitioner reverts back to his original mandatory detention status under § 1225(b)(1), but they do not analyze the parole statute and cite to a single District Court decision for that proposition, *see Pipa-Aquise v. Bondi*, No. 25-cv-1094, 2025 WL 2490657, at *1 (E.D. Va. Aug. 5, 2025); *see also* ECF No. 10 (citing supplemental authority for this proposition). They fail to address whether "return or be returned to the custody from which he was paroled" plainly means that the Petitioner returns to the same custody <u>status</u>, i.e., mandatory detention, that he held when he entered the United States in 2022. *See Guevara v. Tsoukaris*, 2026 WL 969261, at *3 (D.N.J. Apr. 9, 2026) (JXN). ("Respondents fail to discuss the plain text of § 1225(b)(1)" or "analyze the statutory language of the parole statute, § 1182(d)(5)(A), and how it provides for Petitioner's return to mandatory detention under § 1225(b)(1).")

In *Olimov v. Jamison*, 2026 WL 596155, at *4, the District Court analyzed the return to custody language of § 1182(d)(5)(A) and found that it did not necessarily mean return to physical detention. The District Court noted that the government's argument "assumes that 'return . . . to custody' means a return to detention at the moment before parole, but it provides no analysis to support that interpretation." Because this phrase is not defined in the INA, the District Court in *Olimov* "turn[ed] to the phrase's plain meaning at the time of enactment." *See Tanzin v. Tanvir*, 592 U.S. 43, 48 (2020) (citing *FCC v. AT&T Inc.*, 562 U.S. 397, 403 (2011)); *Niz-Chavez v.*

*Garland*, 593 U.S. 155, 160 (2021) (the Court "normally seeks to afford the law's terms their ordinary meaning at the time Congress adopted them").

The District Court observed that

> [w]hen Congress enacted the Immigration and Nationality Act of 1952, it included identical language about a return to custody following parole. *See* Pub.L. 82-414, 66 Stat. 163, 188, § 212(d)(5) (June 27, 1952). [FN omitted.] Then, as now, the statute did not define "*custody*." However, at the time Congress enacted the INA, "custody" could refer to charge, control, or possession, as well as detention. *See* Custody, Black's Law Dictionary, 460 (4th ed. 1951). Indeed, the term was "very elastic and [could] mean actual imprisonment or physical detention or mere power, legal or physical, of imprisoning or of taking manual possession." *Id.*

*Id.* at *5. The District Court also analyzed other uses of the words "custody" and "detain" in § 1182 found that "Congress's use of the various forms of the word 'detain' demonstrates that, in 1952, when Congress wanted to specify physical custody, it knew the words to use." *Id.* (citing *Bittner v. United States*, 598 U.S. 85, 94 (2023); *Russello v. U.S.*, 464 U.S. 16, 23 (1983)). It found that "'custody' is an elastic term that could have various meanings" and that "it was more prudent to assume that Congress meant custody to refer to control over the alien, as opposed to physical detention." *Id.* at *6 (citing *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 488 (3d Cir. 2017) ("The use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words."); *see also Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025) (finding that return to the custody from which he was paroled does not mean a return to physical detention). The court finds this analysis persuasive particularly in light of Respondents' failure to analyze the relevant language.

Nor do Respondents sufficiently analyze what it means for the noncitizen to be "dealt with in the same manner as that of any other applicant for admission." 8 U.S.C. § 1182(d)(5)(A). In

recent months, Courts have held that it simply "mandates that [the petitioner] be treated just as the INA would treat any noncitizen previously granted parole and living in the United States[,]" and that "any determination as to [petitioner's] detention must be conducted under the discretionary framework of Section 1226(a)." *Qasemi*, 2025 WL 3654098, at *12.

Respondents also fail to address how Petitioner still fits within the Designation Provision of Section 1225(b)(1) when plain language of that provision applies to a noncitizen "who has not been admitted or paroled into the United States[.]" 8 U.S.C. § 1225(b)(1)(A)(iii)(II).  The record shows that CBP encountered Petitioner on October 13, 2022, near the border and he was initially processed for expedited removal but referred for a credible fear hearing after expressing a fear of returning to Ecuador.  On December 14, 2022, he was released on parole under § 1182(d)(5)(A) for a period of a year, until December 14, 2023.  Although Petitioner was subject to the Designation Provision when he was encountered by ICE in October 2022, that provision does not apply to Petitioner years later because it plainly exempts those noncitizens who have been have been admitted or paroled into the United States.  The Court holds that the phrase "has not been admitted or paroled" in the Designation Provision "does not refer to a legal status but rather to the event of entry into the United States via admission or parole, which either did or did not occur."[6] *Rodriguez-Acurio*, 811 F. Supp.3d at 300.  Thus, even if Section 1182(d)(5)(A) could be read to return Petitioner to the physical detention or the custody status he held at the time he entered the United States, the plain language of the Designation Provision, § 1225(b)(1)(A)(iii)(II), does not apply to Petitioner because he was  "paroled" into the United States; *see also Rivas Rodriguez*, 2025 WL 3485628, at *2 (finding "because § 1225(b)(1)(A)(iii)(II) applies only to individuals

---

[6] In addition, Petitioner has lived freely in the United States since 2022 and is not an "arriving alien" who is "in the process of reaching the United States." *Rodriguez-Acurio*, 811 F. Supp.3d at 306.

'who have not been . . . paroled,' the plain language of the statute clearly and unambiguously shows that § 1225(b)(1)(A)(iii) cannot serve as the basis for" detention of a noncitizen who was previously paroled under § 1182(d)(5)(A)); *Vasquez-Rosario v. Noem*, Civ. A. No. 25-7427, 2026 WL 196505, at *7 (E.D. Pa. Jan. 26, 2026) (same); *Suazo Rivera v. Blanche*, No. 2:26-cv-03892 (BRM), 2026 WL 1153665, at *3 (D.N.J. Apr. 29, 2026) (same).

Moreover, it appears that Petitioner's parole expired on its own terms, and he lived freely in the interior of the United States after his parole ended. Petitioner was clearly known to immigration authorities, as he applied for asylum and obtained work authorization. ICE arrested Petitioner long after his one-year period of parole expired in December 2023 and pursuant to a warrant used to detain noncitizens under § 1226(a). In similar circumstances, other District Courts have concluded that noncitizens who are not taken into custody when their period of parole expires may only be detained under § 1226(a). *See Cabrera Martinez v. Marich*, 816 F. Supp.3d 356, 373 (W.D.N.Y. 2025) ("[T]his Court joins those courts that have found that an individual who has been living in the United States outside parole and is later apprehended is detained under section 1226.).

Several District Courts have interpreted § 1182(d)(5)(A) to require the mandatory detention under § 1225(b)(1) of parolees who are later arrested in the interior of the United States, *see*, *e.g.*, *Faqirzada v. Rokosky*, No. 25-16639 (MAS), 2026 WL 63614, at *2 (D.N.J. Jan. 8, 2026); *Geincharles v. Rokosky*, 26-cv-150 (ESK), 2026 WL 266093, at *3 (D.N.J. Feb. 2, 2026); *Tasigchana v. Soto*, No. 25-cv-18252 (ZNQ), 2026 WL 266170, at *2-3 (D.N.J. Feb. 2, 2026) (same); and the Third Circuit has not squarely addressed the detention status of parolees.[7]

---

[7] There is some support for this interpretation in the regulations and decisions by BIA, but this Court "must exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024), (overruling *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)). And although Respondents do not explicitly rely on the entry fiction, the Court agrees with the District Court in *Rodriguez-*

Respondents' interpretation of §§ 1225(b)(1) and 1182(d)(5)(A), however, raises serious due process concerns because it requires the mandatory detention of noncitizens who have lived in the United States for years and formed significant ties here.  As other Courts have persuasively found, interpreting §§ 1225(b)(1)(B) and 1182(d)(5)(A) to require mandatory detention of all noncitizens paroled into the United States "would also raise significant constitutional issues." *Qasemi*, 2025 WL 3654098, at *12; *Olimov*, 2026 WL 596155, at *6.  Therefore, to the extent this Court were to find that 1182(d)(5)(A) and/or § 1225 are ambiguous, it would resort to constitutional avoidance, a doctrine which permits a court to choose "'between competing plausible interpretations of a statutory text.'" *Jennings*, 583 U.S. at 298 (quoting *Clark*, 543 U.S. at 381)); *Gonzalez v. United States*, 553 U.S. 242, 251 (2008) (cleaned up) ("When a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, [the Court's] duty is to adopt the latter.").

For all these reasons, the Court rejects Respondents' arguments that Petitioner is subject to mandatory detention under § 1225(b)(1).  Although Petitioner may be lawfully subject to detention under § 1226(a), "the Government did not attempt to follow the requirements of that statute in taking him into custody, nor have they used that statute as a basis for his detention." *Fajardo-Nugra v. Soto*, No. 26-975, 2026 WL 579192, at *1-2 (D.N.J. Mar. 2, 2026).  The Court will not convert Petitioner's detention to "potentially lawful alternate form under a different statute with different procedural requirements and rules." *Id.* at *2 (granting Petitioner's habeas petition and ordering Petitioner's release based on the Government's flawed application of § 1225(b)(2)).  As

---

*Acurio*, 811 F. Supp.3d at 306, which found that "*Thuraissigiam* stands for the limited principle that those 'at the threshold of  initial entry' stand on a different footing for due process purposes than noncitizens 'who have established connections in this country.'" *Id.* at 313-14 (citing 591 U.S. at 107).

in cases involving Petitioners who have been improperly detained under § 1225(b)(2), the Court will order Respondents to release Petitioner within 24 hours.  The Court denies as moot the pending motions TRO motions (ECF Nos. 8, 13) and declines to reach the remaining arguments in light of the relief provided.  An appropriate Order follows.

5/18/26

_s/ Madeline Cox Arleo_
**MADELINE COX ARLEO**
**United States District Judge**